UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
PAUL JACKSON, JR., on behalf of himself and all  :
others similarly situated,                                                :
                                                                                      :
                                  Plaintiff,                   :
                                                                                      :
               -against-                              :      **COMPLAINT**
                                                                                      :
TYME GLOBAL TECHNOLOGIES, LLC,            :
TYME GLOBAL, LLC, and RYAN LEVIN,          :
                                                                                      :
                           Defendants.             :
------------------------------------------------------------------- X

Plaintiff Paul Jackson, Jr. ("Plaintiff" or "Jackson"), on behalf of himself and all others similarly situated, by his attorneys Pechman Law Group PLLC, complaining of Defendants Tyme Global Technologies, LLC, Tyme Global, LLC, and Ryan Levin (collectively, "Defendants"), alleges:

## NATURE OF THE COMPLAINT

1. Throughout Jackson's employment as a call agent and supervisor with Tyme Global, Defendants unlawfully misclassified Jackson and other employees as independent contractors in order to avoid paying required overtime wages for hours worked over forty per workweek. Although Jackson and other employees regularly worked over forty hours per week, Defendants unlawfully paid them on a straight-time hourly basis, meaning the same regular hourly wage rate for hours worked over forty per workweek, that denied Jackson and other employees overtime wages. Defendants also maintained a policy and practice of time shaving with respect to the payment of Jackson and other employees' wages by: (1) reducing their total hours for purposes of wage payments regardless of how many hours Jackson and other employees in fact worked, and (2) automatically deducting lunch breaks from Jackson and other employees' wages regardless of whether lunch breaks were taken.

2.  Jackson brings this action on behalf of himself and all other similarly situated Tyme Global employees who worked in the United States and were paid on an hourly basis seeking declaratory and injunctive relief and to recover unpaid overtime wages, liquidated damages, attorneys' fees and costs, and interest pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA").

## JURISDICTION

3.  This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337.

## VENUE

4.  Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because Tyme Global's headquarters and principal place of business are located in the Southern District of New York.

## THE PARTIES

**Plaintiff Paul Jackson, Jr.**

5.  Jackson resides in Milwaukee County, Wisconsin.

6.  Tyme Global employed Jackson as a call agent and supervisor from approximately July 2020 through October 2020 and again from January 12, 2021 through March 21, 2023.

**The Corporate Defendants**

7.  Defendant Tyme Global Technologies, LLC ("Tyme Global Technologies") is a New York limited liability company with a service of process address located at 60 West 66th Street, New York, New York 10023 and with headquarters and a principal place of business located at 57 West 57th Street, New York, New York 10019.

8.  Tyme Global Technologies advertises itself as "a New York based company that specializes in software and communications solutions for the hospitality industry"

and "in operator services, ticketing software, PBX and backup voice solutions, and text messaging."  See  https://new.tymeglobal.com/2016/06/21/our-company-2/  (last accessed June 27, 2023).

9. Defendant Tyme Global, LLC ("TG LLC" and, collectively with Tyme Global Technologies, "Tyme Global") is a Wyoming limited liability corporation that is registered with the New York State Division of Corporations, does business in New York, and maintains a service of process address and principal place of business located at 60 West 66th Street, New York, New York 10023.

10. TG LLC advertises itself as "a New York-based family-owned business" that provides "remote customer service with cutting-edge technology to support a wide range of industries" with a "team [that] has grown to over 1200 personnel throughout the United States, Canada, and the world."  See https://www.tymeglobal.com/about-us/ (last accessed June 27, 2023).

11. Tyme Global Technologies and TG LLC operate as a single integrated enterprise and employed Jackson and the FLSA Collective.

12. Although registered as separate corporate entities, Tyme Global Technologies and TG LLC are under common ownership and management.

13. For example, Ryan Levin is identified by Tyme Global as the Chief Executive Officer of both Tyme Global Technologies and TG LLC.  See https://new.tymeglobal.com/2016/06/21/executive-biographies-2/ and https://www.tymeglobal.com/about-us/ (last accessed June 27, 2023).

14. David Cristescu is identified by Tyme Global as the Chief Strategy Officer of both Tyme Global Technologies and TG LLC.  See id.

15. Lori Henschen is identified by Tyme Global as the Chief Operating Officer of both Tyme Global Technologies and TG LLC.  See id.

16. Tyme Global Technologies and TG LLC share a common web domain (tymeglobal.com), email address (info@tymeglobal.com), telephone number, and service of process address.

17. On information and belief, Tyme Global Technologies and TG LLC exercise common control over labor relations, including over the recruitment and training of employees, the establishment and implementation of employment policies, the establishment of employee wage rates, and the establishment and implementation of employee time-keeping and wage payment policies and practices.

18. Throughout Jackson and the FLSA Collective's employment, Tyme Global Technologies and TG LLC have had employees, including Jackson, engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

19. In the three years preceding the filing of this Complaint, Tyme Global Technologies and TG LLC, individually and collectively, have had an annual gross volume of sales in excess of $500,000.

20. Tyme Global Technologies and TG LLC, individually and collectively, are enterprises engaged in commerce within the meaning of the FLSA.

**Defendant Ryan Levin**

21. Ryan Levin ("Levin") is the Chief Executive Officer of both Tyme Global Technologies and TG LLC.

22. On information and belief, Levin resides and is domiciled in New York.

23. As the CEO of Tyme Global, Levin holds power and authority over personnel decisions at Tyme Global, including the authority to hire and fire employees, set and implement personnel policies, set employee wage rates, retain time and wage records, and otherwise control the terms and conditions of employment at Tyme Global.

4

24. Levin exercises this power and authority personally and delegates the exercise of this power and authority to other Tyme Global employees, including Tyme Global Operations Managers.

25. For example, after Jackson made complaints about Tyme Global's failure to pay him for all hours worked, Levin contacted Jackson directly to discuss the payment of wages owed to Jackson.

26. Levin exercised sufficient control over Tyme Global's operations and Jackson and other employee's employment to be considered their employer under the FLSA.

## FACT ALLEGATIONS

27. Tyme Global hired Jackson after Jackson submitted a job application online.

28. Initially, Tyme Global assigned Jackson to work as a call agent.

29. Tyme Global assigned Jackson to attend a mandatory training session for training to work as a call agent.

30. Tyme Global set Jackson's hourly wage rate, which ranged throughout his employment from approximately $12 per hour to $17 per hour. Tyme Global paid Jackson on an hourly basis regardless of whether he was assigned to work as a call agent or a supervisor.

31. Jackson worked as a call agent remotely using software provided by Tyme Global.

32. When working as a call agent, Tyme Global assigned Jackson to a team of employees answering inbound calls for Tyme Global customers, including the New York State Department of Labor's Unemployment Insurance Division ("NYDOL").

33. Tyme Global required Jackson and other call agents and supervisors to attend trainings for each new Tyme Global customer that they were assigned to.

34. Tyme Global often required Jackson and other call agents and supervisors to execute confidentiality agreements when assigned to work with a new Tyme Global customer acknowledging that they were subject to discipline if they violated the terms of the confidentiality agreements.

35. Jackson's work schedules were set by Tyme Global. For example, when working as a call agent receiving inbound calls for the NYDOL, Jackson's regular work schedule was from 8:00 a.m. to 5:00 p.m., six days per week (Monday through Saturday), totaling approximately fifty-four hours per workweek. However, Jackson often worked more than his regularly scheduled hours.

36. Tyme Global maintained attendance policies for Jackson and other call agents and supervisors.

37. For example, Tyme Global required Jackson and other call agents and supervisors to sign in and out of work each day on a computerized timeclock system.

38. Jackson's work as a call agent was monitored by Tyme Global supervisors, whom he reported to throughout his workday using the mobile application Slack.

39. For example, in addition to signing in and out of work through the computerized timeclock system, Tyme Global required Jackson and other call agents and supervisors to send a message via Slack to their team acknowledging that they had begun work for the day and were signing off of work for the day.

40. If Jackson and other call agents did not send these Slack messages, Tyme Global would routinely reduce Jackson and other call agents work hours for purposes of wage payments.

41. Tyme Global required Jackson and other call agents and supervisors to report if they were going to be absent from or late to scheduled shifts.

6

42. Tyme Global also required Jackson and other call agents to advise supervisors if there were concerns with a call. For example, when working for the NYDOL, Jackson was required to advise a supervisor if there was a concern that a caller may be making a fraudulent unemployment claim.

43. Tyme Global required Jackson and other call agents to attend meetings with supervisors to discuss work performance and Tyme Global made decisions about whether to promote employees based on their work performance.

44. Tyme Global later promoted Jackson to work as a supervisor.

45. When assigned to work as a supervisor, in addition to receiving inbound calls for Tyme Global customers, Jackson's responsibilities included resolving issues raised by call agents on his assigned teams and implementing Tyme Global's policies with respect to the work performed by call agents.

46. Tyme Global provided Jackson and other supervisors with a Daily Supervisor Task List.

47. As reflected in the Daily Supervisor Task List, Jackson and other Tyme Global supervisors were required on a daily basis to:

   a. Monitor email and Slack communications from team members and check for additional instructions from project managers;

   b. Monitor the status of call agent sign-ins via the computerized timeclock system and contact call agents who were not timely signed in;

   c. Check the previous day's timesheets submitted by call agents and reduce call agents hours worked for purposes of wage payments if the timesheets reflected that call agents worked more than a maximum time set by Tyme Global and reflected on the supervisor's timesheet;

    d. Approve call agent timesheets for wage payment purposes after making any deductions as noted above;

    e. Assist call agents assigned to the supervisor's team when issues arose.

48. Tyme Global further instructed Jackson and other supervisors to split their shifts into 25% administrative time and 75% "agent mode" (*i.e.*, answering inbound customer calls).

49. Tyme Global required Jackson and other supervisors to work at least full time (*i.e.*, at least forty hours per workweek).

50. When assigned to work as a supervisor, Jackson reported to Tyme Global's Operations Manager Heather Smith, Operations Manager Danielle Walden, and Senior Operations Director for Projects Vaneshree Nadasen, among others.

51. Tyme Global executives, including Smith, Walden, and Nadasen, oversaw Jackson and other supervisor's work and approved supervisor timesheets for purposes of wage payments.

52. For example, when disputes arose about Tyme Global's failure to pay Jackson for all hours worked as a result of its time shaving practices as described herein and failure to pay overtime, Jackson raised the issues with Smith, Walden, and Nadasen.

53. Throughout his employment, Tyme Global routinely and as a matter of policy reduced total hours worked by Jackson and other call agents and supervisors for purposes of making wage payments if their total daily hours worked exceeded a maximum amount set by Tyme Global.

54. Tyme Global routinely and as a matter of policy deducted a thirty minute lunch break from Jackson and other call agents and supervisors' total daily hours worked for purposes of making wage payments regardless of whether a lunch break was in fact taken.

55. Tyme Global misclassified Jackson and other call agents, supervisors, and other employees as independent contractors and paid them on a straight-time hourly basis, meaning the same regular hourly wage rate for hours worked up to forty per workweek and for hours worked in excess of forty per workweek.

56. Tyme Global paid Jackson and other call agents, supervisors, and other employees who were paid on an hourly basis by direct deposit or through the mobile application Veem on a biweekly basis.

## COLLECTIVE ACTION ALLEGATIONS

57. Plaintiff brings this action on behalf of himself all other similarly situated Tyme Global employees who worked in the United States and were paid on an hourly basis within the three years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective").

58. The FLSA Collective consists of approximately one thousand (1,000) workers who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by willfully denying the FLSA Collective overtime pay.

59. Plaintiff and the FLSA Collective have worked over forty hours per workweek, have performed virtually the same duties, were paid on an hourly basis, and have been subjected to Defendants' common unlawful pay policies and practices as described herein depriving them of overtime pay at the rate of one and one-half times their regular hourly wage rates for all hours worked in excess of forty per workweek.

60. Defendants intentionally, willfully, and repeatedly harmed the FLSA Collective by engaging in patterns, practices, and policies violating the FLSA, including but not limited to: (1) failing to pay the FLSA Collective for all hours worked per

workweek, and (2) failing to pay the FLSA Collective overtime wages for hours worked over forty per workweek.

61. Defendants engaged in this unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees their compensation.

62. Defendants are aware or should have been aware that the FLSA required them to pay the employees an overtime premium for hours worked in excess of forty per workweek.

63. Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiff and the FLSA Collective.

64. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. All similarly situated employees can be readily identified and located through Defendants' records. The similarly situated employees should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

## FIRST CLAIM
## FLSA – Unpaid Overtime Wages

65. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

66. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiff and the FLSA Collective.

67. Defendants were required to pay Plaintiff and the FLSA Collective overtime wages at a rate of one and one-half (1½) times their regular hourly wage rates for all hours worked in excess of forty hours per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq.*

68. Defendants failed to pay Plaintiff and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

69. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to Plaintiff and the FLSA Collective's compensation

70. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff and the FLSA Collective overtime wages.

71. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. certify this case as a collective action on behalf of the FLSA Collective described herein and authorize the prompt issuance of a notice pursuant to 29 U.S.C. § 216(b) to all prospective members of the FLSA Collective apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b)

b. declare that Defendants violated the overtime wage provisions of the FLSA and supporting regulations;

c. declare that Defendants' violations of the FLSA were willful;

d. enjoin and permanently restrain Defendants from further violations of the FLSA;

e. award Plaintiff and the FLSA Collective damages for unpaid wages;

f. award Plaintiff and the FLSA Collective liquidated damages in an amount equal to their unpaid wages;

g. award Plaintiff and the FLSA Collective pre- and post-judgment interest;

      h.      award Plaintiff and the FLSA Collective reasonable attorneys' fees and costs pursuant to the FLSA; and

      i.      award Plaintiff and the FLSA Collective such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated:  New York, New York
         June 27, 2023

                              PECHMAN LAW GROUP PLLC

                              By:  */s/ Louis Pechman*
                                   Louis Pechman
                                   Galen C. Baynes
                                   PECHMAN LAW GROUP PLLC
                                   488 Madison Avenue - 17th Floor
                                   New York, New York 10022
                                   (212) 583-9500
                                   pechman@pechmanlaw.com
                                   baynes@pechmanlaw.com
                                   *Attorneys for Plaintiff and the*
                                   *Putative FLSA Collective*